IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

JULIE       CRUZ-SANTANA,       in
representation of MARTIN MEDINA DE
LA CRUZ,

      Petitioners,

          v.                          **Civ. No. 26-1028 (GMM)**

REBECCA GONZALEZ-RAMOS, GARRETT
J. RIPA, TODD LYONS, KRISTI NOEM,
PAMELA BONDI, and W. STEPHEN
MULDROW, all in their official
capacities,

      Respondents.

## OPINION AND ORDER

Before the Court are Martin Medina de La Cruz's ("Petitioner"
or "Mr. Medina"), by way of his attorney Julie Cruz-Santana,
*Petition for Writ of Habeas Corpus* and *Urgent Motion Requesting
Order Prohibiting the Transfer of Petitioner from Puerto Rico to
Other Jurisdiction and That This Court Conduct a Bond Hearing
Forthwith* ("*Urgent Motion*"). (Docket Nos. 1, 5).

Pursuant to the reasoning below, this Court **GRANTS** the *Urgent
Motion* as to Petitioner's request for a Temporary Restraining Order
("TRO") and **HOLDS IN ABEYANCE** the *Petition for Writ of Habeas
Corpus* as to the remaining prayers for relief. This Court hereby
**ORDERS** that the United States, its agencies, and employees shall
not transfer Petitioner outside of the jurisdiction of Puerto Rico

Civ. No. 26-1028(GMM)
Page -2-

and that he be granted a bond hearing conducted by an Immigration Judge under the Department of Justice's Executive Office for Immigration Review ("EOIR").

## I.    BACKGROUND

Mr. Medina, a citizen of the Dominican Republic, entered Puerto Rico without inspection on October 27, 2018. (Docket No. 1 at 4). On December 26, 2020, Mr. Medina wed in good faith Nereida Lopez Cordova, a U.S. citizen. (Id.). They divorced on August 5, 2021, but remarried on June 25, 2022. (Id.). Mr. Medina alleges that, during his marriage, he was subject to physical and psychological aggression by his wife, which led him to file a restraining order against her. (Id.). Based on the violence he experienced in his marriage, Mr. Medina filed a petition under the Violence Against Women Act of 1994 ("VAWA") on September 29, 2023, seeking protection from immigration authorities. (Id.). His case was accepted and is pending resolution. (Id.). In the interim, Mr. Medina has been issued employment authorizations and a prima facie certification of protection which has been renewed on three occasions. (Id.).

On January 18, 2026, Mr. Medina was arrested by United States Immigration and Customs Enforcement ("ICE") agents at Placita Caribe, a grocery store in the Puerto Nuevo neighborhood within San Juan, Puerto Rico. (Id. at 2). According to the *Petition for*

Civ. No. 26-1028(GMM)
Page -3-

*Writ of Habeas Corpus*, Mr. Medina was relocated to Aguadilla Processing Center, where he remains under physical custody. (Id.). As pled, the following federal officials (collectively, "Government") authorize Mr. Medina's detention: Rebecca González-Ramos, Special Agent in charge of Homeland Security Investigations in San Juan; Garrett J. Ripa, Miami Field Office Director for ICE, who oversees Puerto Rico's Immigration and Removal Operations conducted at the ICE Office in GSA Guaynabo Detention Facility; Todd Lyons, Acting Director for ICE; Kristi Noem, Secretary of Homeland Security; Pamela Bondi, United States Attorney General; and W. Stephen Muldrow, United States District Attorney for the District of Puerto Rico. (Id. at 3-4; *see* also Docket No. 4).

On January 21, 2026, Mr. Medina filed a verified *Petition for Writ of Habeas Corpus*. Mr. Medina alleges his detention violates the Immigration and Nationality Act ("INA") and his due process rights of access to counsel and adequate conditions of confinement under the Fifth Amendment to the United States Constitution. (Docket No. 1 at 9-12). He seeks, in part, an immediate TRO prohibiting the Government, their agents, and employees from transferring Petitioner out of the District of Puerto Rico until he receives a bond hearing and until his writ of habeas corpus is fully reviewed. (Id. at 12-13). In addition, Mr. Medina asks this Court to grant his habeas petition and to award him reasonable

Civ. No. 26-1028(GMM)
Page -4-

costs and attorney's fees pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412. (Id. at 13).

To accompany Mr. Medina's habeas petition, three other motions were also filed on January 21, 2026. First, a *Supplemental Motion to Habeas Corpus Petition (Dkt. 1)* was filed containing an affidavit from Mr. Medina's immigration attorney, Counsel Julie Cruz Santana, affirming Mr. Medina's current detention, his likelihood of being transferred out of the jurisdiction because there are no immigration detention centers in Puerto Rico, and the obstacles that come with litigating in a different jurisdiction. (Docket No. 4). Second, the *Urgent Motion* was filed, which asks the Court to grant an immediate TRO. (Docket No. 5). Lastly, Petitioner filed a *Motion in Compliance* demonstrating that service had been conducted or commenced as to each Government official. (Docket No. 6).

At this emergency juncture, the Court only addresses whether to issue a TRO.[1]

---

1 To the extent that this Court must review Petitioner's habeas petition – without deciding the merits of the habeas itself - to review Petitioner's prayer for a TRO, it has the jurisdiction to do so. *See* 28 U.S.C. § 2241(c)(3) (providing federal courts with jurisdiction to review habeas petitions filed by immigration detainees who assert that they are "in custody in violation of the Constitution or laws or treaties of the United States"). Moreover, as pled, Petitioner alleges having exhausted his administration remedies. *See* (Docket No. 1 at 4). Nevertheless, this Court currently refrains from deciding the writ of habeas corpus. *See also* Aguilar v. U.S. Immigr. & Customs Enf't, 510 F.3d 1, 11 (1st Cir. 2007).

Civ. No. 26-1028(GMM)
Page -5-

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 65(b) controls this Court's analysis. TROs can be issued with or without notice to the adverse parties.[2] Fed. R. Civ. P. 65(b)(1).

Courts have interpreted the standard for issuing a TRO "the same as [those] for a preliminary injunction." Servicios Legales de P.R., Inc. v. Union Independiente de Trabajadores de Servicios Legales, 376 F. Supp. 3d 163, 166 (D.P.R. 2019) (citation omitted). In order for a court to grant a TRO, a plaintiff "'must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that the injunction is in the public interest." Peoples Fed. Sav. Bank v. People's United Bank, 672 F.3d 1, 8-9 (1st Cir. 2012) (quoting Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008)). Petitioner "bears the burden of demonstrating that these four factors weigh in its favor." Esso Standard Oil Co. v. Monroig-Zayas, 445 F.3d 13, 18 (1st Cir. 2006).

A TRO, like a preliminary injunction, is "an extraordinary and drastic remedy that is never awarded as of right." Peoples

---

2 Notice has been provided. See (Docket No. 6) (demonstrating service was conducted on Government officials Ms. González-Ramos and Mr. Muldrow and the remaining Government officials have been tendered service by certified mail); Muñiz-Negrón v. Worthington Cylinder Corp., No. 17-CV-1985-RAM, 2021 WL 5313002, at *2 (D.P.R. Aug. 16, 2021).

Civ. No. 26-1028(GMM)
Page -6-

_Fed. Sav. Bank_, 672 F.3d at 8-9 (_quoting_ Voice of the Arab World,
Inc. v. MDTV Med. News Now, Inc., 645 F.3d 26, 32 (1st Cir. 2011);
_accord_ Mass. Coal. of Citizens with Disabilities v. Civ. Def.
Agency & Off. of Emergency Preparedness, 649 F.2d 71, 76 n.7 (1st
Cir. 1981). "[T]rial courts have wide discretion in making
judgments regarding the appropriateness of" TRO relief. Sanchez v.
Esso Standard Oil Co., 572 F.3d 1, 14 (1st Cir. 2009). Thus,
granting a TRO is "a matter for the discretion of the district
court and is reversible, of course, only for an abuse of
discretion." Planned Parenthood League of Mass. v. Bellotti, 641
F.2d 1006, 1009 (1st Cir. 1981) (citation omitted).

### III. APPLICATION OF LAW

A.    Likelihood of Success on the Merits

To assess whether Petitioner is likely to succeed on the
merits in requesting a bond hearing, the Court must first address
the threshold question of which statute provides the Government
with the legal basis to detain Mr. Medina.

The INA affords the Government the authority to detain certain
noncitizens. Importantly, the INA differentiates between mandatory
detention and discretionary detention. Only the latter provides a
detainee with an entitlement to a bond hearing before an
Immigration Judge. Two statutory provisions control this
distinction: 8 U.S.C. §§ 1225 and 1226.

Civ. No. 26-1028(GMM)
Page -7-

Section 1225 governs the detention of noncitizens who have not been "admitted" under the INA. As relevant here, Section 1225 provides for inspection of "[a]ll [noncitizens] . . . who are applicants for admission or otherwise seeking admission or readmission to or transit through the United States." 8 U.S.C. § 1225(a)(3). An "applicant for admission" is defined as "[a noncitizen] present in the United States who has not been admitted or who arrives in the United States . . . ." Id. § 1225(a)(1). Notably, Section 1225(b)(2) marshals a mandatory detention scheme by providing that, for noncitizens who are "applicant[s] for admission, if the examining immigration officer determines that a [noncitizen] seeking admission is not clearly and beyond a doubt entitled to be admitted, the [noncitizen] shall be detained for a proceeding under section 1229a [for full removal proceedings]." Id. § 1225(b)(2)(A). Detention under Section 1225(b)(2) is generally mandatory, and the statute does not provide for bond hearings. See Jennings v. Rodriguez, 583 U.S. 281, 297 (2018).

Section 1226, by contrast, governs the "usual removal process" and affords noncitizens procedural protections not available in expedited removal proceedings. See Dep't of Homeland Sec. v. Thuraissigiam, 591 U.S. 103, 108 (2020). Under Section 1226, a noncitizen who is "arrested and detained" faces three potential outcomes: the Attorney General "may continue to detain

Civ. No. 26-1028(GMM)
Page -8-

the arrested [noncitizen]"; the Attorney General "may release the [noncitizen] on bond of at least $1,500"; or the Attorney General "may release the [noncitizen] on conditional parole." 8 U.S.C. § 1226(a). Section 1226(a) therefore "establishes a discretionary detention framework for noncitizens." Gomes v. Hyde, No. 1:25-CV-11571, 2025 WL 1869299, at *1 (D. Mass. July 7, 2025).

Where removal and detention of a noncitizen is discretionary, rather than mandatory, Section 1226(a) entitles a noncitizen to an initial bond hearing before a neutral decisionmaker, the opportunity to be represented by counsel and to present evidence, the right to appeal, and the right to seek a new hearing when circumstances materially change. *See also* Rodriguez Diaz v. Garland, 53 F.4th 1189, 1202 (9th Cir. 2022); Doe v. Tompkins, 11 F.4th 1, 2 (1st Cir. 2021) (holding that the Government bears the burden of proving at an initial bond hearing held under Section 1226(a) that (1) a noncitizen poses a danger to the community based on clear and convincing evidence, or (2) the noncitizen poses a flight risk based on a preponderance of the evidence); Brito v. Garland, 22 F.4th 240, 246 (1st Cir. 2021) (same).

Excepted from the general rule of discretionary detention under Section 1226(a) are noncitizens involved in specific enumerated criminal activities. 8 U.S.C. § 1226(c)(1). Under Section 1226(c), in accordance with the Laken Riley Act enacted

Civ. No. 26-1028(GMM)
Page -9-

in January 2025, the Government is required to detain certain noncitizens who fall within the statute's criminal categories.

1.    Discretionary detention applies as to Mr. Medina

Here, as pled, Mr. Medina entered the country without authorization in 2018, has a pending VAWA self-petition for eligibility to become a lawful permanent resident as a victim of domestic violence, and was "arrested and detained" by ICE officials in January 2026. *See generally* (Docket No. 1). Given that Section 1226(a) governs detention for noncitizens who were "arrested and detained" while residing in the United States, interpreting Section 1225(b)(2) to apply to this same category would render it and amendments under the Laken Riley Act superfluous. *See* Gomes, 2025 WL 1869299, at *6-7 (outlining statutory interpretation of Section 1226(a) and Section 1225(b)(2) that demonstrates that an arrest and detention of noncitizens residing in the United States cannot fall under Section 1225(b)(2)). Such an interpretation would also conflict with the INA's structural distinction between arriving applicants for admission and noncitizens already present in the United States and arrested within the country.

Thus, at this juncture, based on the allegations in the petition, the Court finds that Section 1226(a)'s discretionary regime likely governs the detention because Mr. Medina was arrested

Civ. No. 26-1028(GMM)
Page -10-

while residing in the United States. This interpretation aligns with the statutory distinction between arriving applicants for admission (governed by Section 1225) and noncitizens who are already present in the United States and are later arrested and detained (governed by Section 1226). Applying Section 1225(b)(2) to this factual posture would blur that distinction and render Section 1226(a) effectively redundant, contrary to basic principles of statutory interpretation. Nor, with the information that this Court has before it, has Mr. Medina disclosed any criminal record at all, which could otherwise subject him to the mandatory detention exception outlined under Section 1226(c). *See generally* (Docket No. 1); Hernandez-Lara v. Lyons, 10 F.4th 19, 26-27 (1st Cir. 2021); Rodriguez-Diaz, 53 F.4th at 1196.

Accordingly, the Court proceeds under the assumption that Section 1226(a) applies, subject to further factual development.

2.    Petitioner is likely to succeed on the merits

Where removal and detention of a noncitizen is discretionary, rather than mandatory, Section 1226(a), entitles a noncitizen to an initial bond hearing before a neutral decisionmaker, the opportunity to be represented by counsel and to present evidence, the right to appeal, and the right to seek a new hearing when circumstances materially change. Rodriguez-Diaz, 53 F.4th at 1202; *see also* Doe, 11 F.4th at 2.

Civ. No. 26-1028(GMM)
Page -11-

From the record before this Court, it appears that Petitioner did not receive a bond hearing. *See* (Docket No. 1 at 8-9). As alleged by Petitioner, the Government purportedly bases its decision to not grant a bond hearing by resting upon a recent decision issued by the Board of Immigration Appeals <u>Matter of Yajure Hurtado</u>, 29 I&N Dec. 216 (BIA 2025). This administrative decision found that Immigration Judges do not have jurisdiction over custody redeterminations for noncitizens who were present in the United States without admission. <u>Id.</u> at 220-28. This Court, however is not bound by BIA interpretations that conflict with the statutory text or controlling circuit precedent. *See* <u>Loper Bright Enters. v. Raimondo</u>, 603 U.S. 369, 400 (2024) (noting "agencies have no special competence in resolving statutory ambiguities," but "(c)ourts do").

That is, district courts that have considered this issue have, after conducting persuasive, well-reasoned analyses of the statutory language and legislative history, rejected <u>Matter of Yajure Hurtado</u>'s interpretation and routinely upheld the right to a bond hearing under circumstances akin to those of Petitioner. *See*, *e.g.*, <u>Sampiao v. Hyde</u>, 799 F. Supp. 3d 14, 29 n.11 (D. Mass. 2025) (noting the court's disagreement with the BIA's analysis in <u>Yajure Hurtado</u>); <u>Elias Escobar v. Hyde</u>, No. 25-CV-12620, 2025 WL 2823324, at *3 (D. Mass. Oct. 3, 2025); <u>Moreira Aguiar v. Moniz</u>,

Civ. No. 26-1028(GMM)
Page -12-

No. 25-CV-12706, 2025 WL 2987656, at *3 (D. Mass. Oct. 22, 2025);
Tomas Elias v. Hyde, No. 25-CV-540, 2025 WL 3004437, at *3 (D.R.I.
Oct. 27, 2025); Lora-Salazar v. Ripa, No. 26-CV-1014-MAJ (D.P.R.
Jan. 13, 2026) (Docket Nos. 5, 13). In the same vein, district
courts have similarly rejected the adoption of a broad
interpretation of 1225(b)(2) that would, consequently, generate
overlap with Section 1226(a) as to erroneously deny the
noncitizen's right to a bond hearing. *See generally* Jimenez v. FCI
Berlin, Warden, 799 F. Supp. 3d 59 (D.N.H. 2025); Rodriguez v.
Nessinger, No. 25-CV-505, 2025 WL 3306576 (D.R.I. Oct. 17, 2025);
Doe v. Moniz, 800 F. Supp. 3d 203 (D. Mass. 2025); Loa Caballero
v. Baltazar, No. 25-CV-3120, 2025 WL 2977650 (D. Colo. Oct. 22,
2025); dos Santos v. Noem, 2025 WL 2370988 (D. Mass. Aug. 14,
2025); Guerrero Orellana v. Moniz, No. 25-CV-12664-PBS, 2025 WL
2809996 (D. Mass. Oct. 3, 2025) (granting a preliminary injunction
to release a Petitioner unless provided with a bond hearing
compliant with Hernandez-Lara).

This Court joins its sister courts. This Court finds that
Petitioner has demonstrated a strong likelihood of success on the
merits of his claim that, because he is being detained pursuant to
Section 1226(a), he is entitled to a bond hearing.

Civ. No. 26-1028(GMM)
Page -13-

B.  <u>Irreparable Harm</u>

The Court turns next to the irreparable harm prong of a TRO analysis. When evaluating the expedition of equitable relief, "[an] injunction should issue only where [it is] essential in order effectually to protect . . . rights against injuries otherwise irremediable." <u>Weinberger v. Romero-Barcelo</u>, 456 U.S. 305, 312 (1982) (*quoting* <u>Cavanaugh v. Looney</u>, 248 U.S. 453, 456 (1919)). Here, the "irremediable" injury would be threefold: detention; removal from this Court's jurisdiction pending Mr. Medina's habeas corpus proceedings; and the ensuing, imminent consequences that such removal would have on his person and his rights.

Without a bond hearing, Mr. Medina faces a potentially prolonged period of detention, depriving him of his liberty. <u>Ferrara v. United States</u>, 370 F. Supp. 2d 351, 360 (D. Mass. 2005) ("Obviously, the loss of liberty is a . . . severe form of irreparable injury."). During this time, Mr. Medina would also face a substantial risk of confinement in facilities that courts have repeatedly found raise serious health, safety, and due process concerns. *See, e.g.*, <u>Mercado v. Noem</u>, 800 F. Supp. 3d 526, 545 (S.D.N.Y. 2025) (discussing allegations of "significant overcrowding, pervasive unsanitary conditions, lack of basic hygiene resources, insufficient food and water, inadequate sleeping conditions, substandard medical care, and extremely

Civ. No. 26-1028(GMM)
Page -14-

significant restrictions on attorney-client communications" in a New York immigration detention center).

Importantly, the Court must note that Mr. Medina, as alleged, is a survivor of domestic abuse and is currently petitioning for a pathway to permanent residency under VAWA. *See* (Docket No. 1 at 4). Saddling Mr. Medina with such conditions of confinement - without a bond hearing with a proper evaluation of the specific circumstances that pertain to him - would only add to the heavy psychological toll being a survivor of gender-based violence places on his shoulders. These considerations are directly relevant to an individualized custody determination at a bond hearing. Remaining behind bars would likely exacerbate this as he would likely not receive the mental and medical treatment needed as a survivor of gender-based violence.

Moreover, without a TRO, Mr. Medina would be likely be transferred to an immigration detention facility in mainland United States and separated from his counsel – which raises grave concerns as to his constitutional right to access to counsel.

As such, the Court finds this factor also weighs in Mr. Medina's favor.

C.    Balance of Equities and Public Interest

The remaining preliminary injunction factors - the balance of equities and the public interest - "merge when the Government is

Civ. No. 26-1028(GMM)
Page -15-

the opposing party." <u>Nken v. Holder</u>, 556 U.S. 418, 435 (2009)

The First Circuit has repeatedly held that where, as here, the Government is likely acting contrary to the plain text of federal law, the balance of equities weighs against it. *See* <u>New York v. Trump</u>, 133 F.4th 51, 71 (1st Cir. 2025); <u>New Jersey v. Trump</u>, 131 F.4th 27, 40-41 (1st Cir. 2025). Relatedly, it is well-settled that "there is generally no public interest in the perpetuation of unlawful agency action." <u>Rhode Island v. Trump</u>, 155 F.4th 35, 50 (1st Cir. 2025) (citation omitted).

Indeed, this Court understands that the opposite is true: proper enforcement of immigration laws is in the public interest; and the Government will not be harmed by - nor do they have an interest in - the violation of the plain text of federal law. *See, e.g.*, <u>Loa Caballero</u>, 2025 WL 2977650, at *9 n.7.

### IV.    CONCLUSION

Based on the *Petition for Writ of Habeas Corpus*, the verified certification of counsel contained therein, accompanying motions, and the sworn affidavit submitted, (Docket Nos. 1, 4-5), this Court finds at this juncture that irreparable harm is likely to befall Mr. Medina if the TRO is denied.

As such, this Court **GRANTS** the *Urgent Motion* as to Petitioner's request for a TRO and **HOLDS IN ABEYANCE** the *Petition for Writ of Habeas Corpus* as to the remaining prayers for relief.

Civ. No. 26-1028(GMM)
Page -16-

This Court **ORDERS** that the Government shall not transfer Petitioner outside of Puerto Rico and that he be granted a bond hearing before an Immigration Judge, <u>no later than February 2, 2026 at 5:00 P.M.</u> The Government shall inform <u>by February 3, 2026</u> whether such bond hearing has been held and its outcome. The Government must also file a pleading responsive to Petitioner's *Petition for Writ and Habeas Corpus* by <u>February 3, 2026 at 5:00 P.M.</u> This Order grants only temporary injunctive relief and does not adjudicate the merits of the *Petition for Writ of Habeas Corpus*.

        IT IS SO ORDERED.

        In San Juan, Puerto Rico, on January 22, 2026.

                                        /s/ Gina R. Méndez-Miró
                                        GINA R. MÉNDEZ-MIRÓ
                                        UNITED STATES DISTRICT JUDGE